1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7   AHMED AL WAZZAN,

8                          Plaintiff,                    CASE NO. C14-0670-JLR-MAT

9        v.

10  CAROLYN W. COLVIN, Acting                   REPORT AND RECOMMENDATION
    Commissioner of Social Security,            RE: SOCIAL SECURITY DISABILITY
11                                               APPEAL

                           Defendant.
12

13          Plaintiff Ahmed Al Wazzan proceeds through counsel in his appeal of a final decision of

14  the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

15  denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an

16  Administrative Law Judge (ALJ).   Having considered the ALJ's decision, the administrative

17  record (AR), and all memoranda of record, the Court recommends that this matter be

18  AFFIRMED.

19                      **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1981.[1]   He completed one year of college in Iraq.  (AR 48.)

21  / / /

22  _____

          [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
    Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case
23  Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE - 1

Plaintiff protectively filed an application for SSI on November 30, 2010, alleging disability beginning January 1, 1995. (AR 19, 161-69.) Plaintiff later amended his onset date to November 30, 2010, the date of his application. (AR 44-45.) His application was denied at the initial level and on reconsideration. (AR 95-98, 104-12.)

On April 17, 2012, ALJ Mary Gallagher Dilley held a hearing, taking testimony from plaintiff, plaintiff's social worker, and a vocational expert. (AR 40-70.) Due to plaintiff's limited English proficiency, an interpreter was also present at the hearing. (AR 40.) On June 28, 2012, the ALJ issued a decision finding plaintiff not disabled. (AR 16-39.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on February 28, 2014 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since November 30, 2010, the application date. (AR 21.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's mild lumbar degenerative disk disease, headaches, post traumatic stress disorder (PTSD), and depression to be severe impairments at step two. (AR 21-25.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 25-26.)

REPORT AND RECOMMENDATION
PAGE - 2

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to lift and/or carry twenty pounds occasionally and ten pounds frequently.  The ALJ found plaintiff could stand and/or walk six hours in an eight hour workday and sit for six hours in an eight hour work day, but could never climb ladders, ropes, or scaffolds.  Further, the ALJ found plaintiff could occasionally balance and should avoid even moderate exposure to hazards.  The ALJ noted plaintiff has minimal skills in verbal English and is unable to read English and limited plaintiff to simple, routine work.  (AR 26.)  The ALJ found plaintiff had no past relevant work.  (AR 34.)

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With the assistance of a vocational expert, the ALJ found plaintiff capable of performing other jobs, such as small parts assembler, food sorter, and sandwich board carrier. (AR 34-35.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

REPORT AND RECOMMENDATION
PAGE - 3

Plaintiff argues the ALJ erred by: (1) failing to provider clear and convincing reasons to discredit plaintiff's testimony; (2) improperly rejecting the opinions of Christie Schmid, MSW, Mustapha Hydara, ARNP, Becky Sherman, Ph.D., Victoria McDuffee, Ph.D., and George Ankuta, Ph.D.; and (3) failing to properly incorporate all of plaintiff's mental limitations into her RFC finding.  He asks that the ALJ's decision be reversed and his claim remanded for an award of benefits or, in the alternative, for further proceedings.  The Commissioner argues the ALJ's decision is supported by substantial evidence and should be affirmed.

<u>Credibility</u>

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ in this case found that while plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. Contrary to plaintiff's contention, the ALJ provided a number of clear and convincing reasons in

REPORT AND RECOMMENDATION
PAGE - 4

1  support of this conclusion.

2  A.       Objective Medical Evidence Does Not Corroborate the Extent of His Complaints

3          The ALJ found plaintiff's complaints not supported by clinical findings or other objective

4  medical evidence in the record.  (AR 28-29.)  A determination that a claimant's complaints are

5  "inconsistent with clinical observations" can satisfy the clear and convincing requirement.

6  *Regennitter v. Commissioner of SSA*, 166 F.3d 1294, 1297 (9th Cir. 1998).   However, a

7  claimant's pain testimony may not be rejected "*solely* because the degree of pain alleged is not

8  supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir.

9  1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.1991) (*en banc*)) (emphasis

10  added); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir.2001); *Fair v. Bowen*, 885 F.2d

11  597, 601 (9th Cir. 1989).   The same is true with respect to a claimant's other subjective

12  complaints. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (finding that while

13  holding in *Bunnell* was couched in terms of subjective complaints of pain, its reasoning extended

14  to claimant's non-pain complaints as well).

15          The ALJ gave several examples to show that plaintiff's subjective complaints lacked

16  support in the medical record.  (AR 28-29.)  The ALJ noted that, despite complaints of back and

17  leg pain, plaintiff was generally found to have normal gait and coordination as well has full

18  sensation and strength with negative straight leg raise.  (AR 28, 282, 294, 391, 432.)  The ALJ

19  also noted that imaging of plaintiff's back showed only minimal degenerative changes.  (AR 28,

20  409.)  Dr. Terasaki restricted him to stop taking the unprescribed narcotics plaintiff was getting

21  from "a friend."  (AR 391-9, *see* also 347.)

22          With regard to plaintiff's mental impairments, the ALJ noted that plaintiff's provider

23  opined that his sleep difficulty may be a result of his own sleep hygiene, smoking, and caffeine

REPORT AND RECOMMENDATION
PAGE - 5

consumption.  (AR 29, 347.)  The record also shows plaintiff's symptoms were under control and his mood was improved with no further nightmares.  (AR 29, 334, 343.)  The ALJ reasonably found plaintiff's subjective complaints unsupported by the medical evidence.  While this alone is not a sufficient reason to discount plaintiff's credibility, the ALJ did provide other clear and convincing reasons. *See Orteza*, 50 F.3d at 749-50.

B.    Drug Seeking Behavior

       The ALJ also discredits plaintiff's credibility due to his drug seeking behavior.  (AR 29.)  The ALJ found this behavior demonstrated plaintiff had an ulterior motive for his pain complaints.  *Id.*  [T]he ALJ may consider motivation and the issue of secondary gain in rejecting symptom testimony.  *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

       The record shows plaintiff frequently requested a prescription for narcotic pain medication, but was almost always refused such a prescription and advised to stop taking them.  (AR 29, 251, 300, 384, 391, 429.)  Plaintiff also admitted taking narcotic medication that was not prescribed to him.  (AR 29, 347, 391.)  Plaintiff's counselor also noted that he admitted improperly using narcotics, not for pain, but to numb his emotions.  (AR 29, 354.)  The ALJ reasonably concluded that plaintiff's persistent request for narcotic medication along with his improper use of such a medication demonstrated a motive to exaggerate his pain symptoms. This was a clear and convincing reason to discredit plaintiff's credibility.

C.    Plaintiff's Activities

       The ALJ further discredits plaintiff's credibility finding his subjective statements inconsistent with his daily activities.  (AR 29-30.)  To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. *Smolen v. Chater*, 80 F.3d

REPORT AND RECOMMENDATION
PAGE - 6

1273, 1284 (9th Cir. 1996).  The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination," first, they can "meet the threshold for transferable work skills," second, they can "contradict his other testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ cited to specific activities plaintiff performed that were inconsistent with his symptom testimony.  The ALJ first noted that while plaintiff reported being unable to do most daily activities, including administer his medication and prepare meals, he still planned to travel to Jordan in March 2012.  (AR 30, 334.)  In addition, the ALJ noted plaintiff's ability to attend English language classes for a year despite his allegations of disabling symptoms.  (AR 30.)  The ALJ reasonably found these activities to be inconsistent with plaintiff's testimony, thus providing another clear and convincing reason to discredit plaintiff's credibility.

D.   Inconsistent Statements

The ALJ also found inconsistencies in plaintiff's statements to adversely affect his credibility.  (AR 30.)  In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen*, 80 F.3d at 1284.

The ALJ noted plaintiff's statements regarding his back pain had changed over time. While the records show he did not complain of back pain until well into the relevant time period, he later reported having significant pain since he was abducted in 2007.  (AR 30.)  The ALJ also noted that plaintiff's reports regarding the length of his purported coma varied from three months to a year.  (AR 30, 287, 303.)  Plaintiff's allegations regarding the frequency of his nightmares were also inconsistent throughout the record.  (AR 30, 287-88, 303.)  Finally, the ALJ again

REPORT AND RECOMMENDATION
PAGE - 7

noted plaintiff's inconsistency regarding his narcotic use.  (AR 30.)  These inconsistent statements were a clear and convincing reason to discredit plaintiff's credibility.

<u>Medical Opinion Evidence</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons.  *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751).  Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct."  *Id*.  (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Less weight may be assigned to the opinions of "other sources," such as nurse practitioners.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).  However, the ALJ's decision should reflect consideration of other source opinions, Social Security Ruling (SSR) 06-3p, and the ALJ may discount the evidence by providing reasons germane to each source,  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (cited sources omitted).

/ / /

REPORT AND RECOMMENDATION
PAGE - 8

A.    Christie Schmid, MSW

Ms. Schmid, plaintiff's counselor at International Counseling and Community Services (ICCS) submitted multiple letters of support to the record.  (AR 256-57, 327-28, 410-11, 417-18.)  Ms. Schmid also submitted a Mental RFC Assessment form, dated April 3, 2012, and testified at plaintiff's hearing.  (AR 57-65, 412-16.)  Plaintiff argues these opinions should have been accorded greater weight because they are from a treating provider.  Dkt. 13 at 7.  While Ms. Schmid was plaintiff's counselor, under the regulations she is considered an "other source," thus, the ALJ was only required to give germane reasons to discredit her opinions. *Gomez*, 74 F.3d at 970.  The Court finds the ALJ provided such reasons.

First, the ALJ found the opinion Ms. Schmid's statements about plaintiff's limitations inconsistent with her own treatment notes.  (AR 30.)  An ALJ may discount lay testimony if it conflicts with the medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence constitutes germane reason); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  The ALJ noted that, while Ms. Schmid testified that plaintiff had suicidal ideation, flashbacks, and dissociative symptoms, few clinical notes corroborated such symptoms. *Id.*  Further, while Ms. Schmid testified that plaintiff was in treatment three to four times per month, the clinical records indicated far fewer visits.  (AR 30, 333-75.)  Finally, Ms. Schmid testified that plaintiff required significant support from his family in order to function, yet his mental status examinations failed to indicate that he suffered from cognitive deficits severe enough to make such assistance necessary.  (AR 31.)  This lack of support and inconsistency with her own treatment notes was a germane reason to discredit Ms. Schmid's testimony.

REPORT AND RECOMMENDATION
PAGE - 9

1    Further, an ALJ may reject lay witness evidence if other evidence in the record regarding

2    the claimant's activities is inconsistent therewith. *See Carmickle v. Commissioner, Social Sec.*

3    *Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (ALJ's rejection of lay witness evidence because it

4    was inconsistent with claimant's successful completion of continuous full-time coursework

5    constituted reason germane to lay witness).  The ALJ noted that Ms. Schmid did not observe the

6    difficulties she identified, but merely reported plaintiff's own allegations. However, the ALJ

7    found plaintiff's daily activities, including his plan to travel to Jordan, significant social

8    relationships, and ability to attend English courses, inconsistent with Ms. Schmid's testimony.

9    (AR 30-31.)  This inconsistency was a germane reason to discredit the opinion.

10    In addition to her testimony, Ms. Schmid's opinions were set forth in letters to Lutheran

11    Community Services.  (AR 256-57, 327-28, 410-11, 417-18.)  The letters presented the same

12    weaknesses as her testimony in that they rely on plaintiff's reports of his difficulties and

13    limitations.  The letters use the same or similar language, with some exceptions.  The ALJ

14    discredited these letters finding them based on plaintiff's incredible subjective complaints, as

15    Ms. Schmid administered no testing.  (AR 31.)  "[An] ALJ may reject a treating physician's

16    opinion if it is based 'to a large extent' on a claimant self-reports that have been properly

17    discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting*

18    *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (*citing Fair v. Bowen*,

19    885 F.2d 597, 605 (9th Cir. 1989)). This situation is distinguishable from one in which the doctor

20    provides his own observations in support of his assessments and opinions. *See Ryan v. Comm'r*

21    *of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear

22    and convincing reasons for rejecting an examining physician's opinion by questioning the

23    credibility of the patient's complaints where the doctor does not discredit those complaints and

REPORT AND RECOMMENDATION
PAGE - 10

1   supports his ultimate opinion with his own observations"); *see also Edlund v. Massanari*, 253

2   F.3d 1152, 1159 (9th Cir. 2001).

3          The ALJ also considered a mental RFC assessment signed by Ms. Schmid.  (AR 412-

4   416).  The ALJ found it inconsistent with other evidence in the record, citing the medical

5   opinions of Dr. Ankuta and the state non-examining physicians.  (AR 33, 83-94, 287-89.)  An

6   ALJ may discount lay testimony if it conflicts with the medical evidence.  *Lewis v. Apfel*, 236

7   F.3d 503, 511 (9th Cir. 2001); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)

8   (inconsistency with medical evidence constitutes germane reason); *Vincent v. Heckler*, 739 F.2d

9   1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available

10  medical evidence).

11         The ALJ also discredited the mental RFC signed by Ms. Schmid because there was no

12  explanation for the severity of the assessed limitations.  (AR 33, 412-416.)  *See Murray v.*

13  *Heckler*, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical

14  opinions over check-off reports).  While the RFC did reference the letter to Lutheran Community

15  Services discussed above, those opinions were properly discounted.  This lack of explanation

16  provided another germane reason to discredit the mental RFC assessment signed by Ms. Schmid.

17  The ALJ did not err in his evaluation of the opinion evidence from Ms. Schmid.

18  B.    <u>Mustapha Hydara, ARNP</u>

19         Mr. Hydara, plaintiff's medication manager at ICCS,   co-signed the letters from Ms.

20  Schmid to Lutheran Community Services dated October 25, 2011 and April 11, 2012,  (AR 327-

21  28, 417-18) as well as the mental RFC form signed by Ms. Schmid.  (AR 419-23.)  Mr. Hydara

22  completed a psychological evaluation for the Washington State Department of Social and Health

23  Services (DSHS) dated September 30, 2011 (AR 322-25.)  Plaintiff again argues that the ALJ

REPORT AND RECOMMENDATION
PAGE - 11

failed to accord proper weight to these opinions.  This Court disagrees.

With regard to the letters and mental RFC assessment, the Court has already found a lack of error in the ALJ's discounting of these opinions.  As with Ms. Schmid, Mr. Hydara is treated as an "other source" for purposes of evaluating medication evidence, and the ALJ may discredit his opinions upon providing germane reasons.

With regard to the DSHS psychological evaluation, the ALJ also provided germane reasons to discredit this opinion.  Here, the ALJ points out that the mental status examination findings listed by Mr. Hydara endorses marked or severe limitations in every category listed, without providing any support for the opinions.  Such extreme limitations were found unsupported by the record, opining limitations that were inconsistent with every other opinion. (AR 30).  This lack of support or explanation is a germane reason to discredit the opinion.

The ALJ further finds that the opinion indicates Mr. Hydara was acting as an advocate and in an effort to secure further medical coverage for plaintiff, thus detracting from the veracity of the opinion.  (AR 33.)  The Court finds this particular reason less persuasive.  However, the ALJ provided other germane reasons to discredit of Mr. Hydara's opinions in the record. As such, the ALJ did not commit reversible error.

C.    Becky Sherman, Ph.D.

Dr. Sherman submitted a DSHS psychological evaluation dated December 12, 2011. (AR 329-32.)  The contents of this opinion were identical to the DSHS psychological evaluation submitted by Mr. Hydara dated September 30, 2011, discussed previously.  (AR 322-25.)  Unlike Mr. Hydara, Dr. Sherman is an acceptable medical source whose opinion is contradicted by other opinion evidence in the record, thus the ALJ needed to provide specific and legitimate reasons supported by substantial evidence to discredit this opinion.  *See Lester*, 81 F.3d at 830-31.  The

reasons given by the ALJ to discredit Mr. Hydara's opinion are also legally sufficient to discredit Dr. Sherman's opinion.

The ALJ first discredits Dr. Sherman's opinion because it was identical to that submitted by Mr. Hydara, thus reflecting poorly on the veracity of the opinion. (AR 33.)   Regardless of who authored the form, by signing the form, Dr. Sherman attested to the opinions contained within the form. However, the Court agrees that the fact that two identical forms were submitted signed by two different providers and listing two different examination dates does cast doubt on the reliability of the second form. The ALJ reasonably considered this information in discrediting Dr. Sherman's opinion. Furthermore, the ALJ provided other specific and legitimate reasons to discredit the opinion.

As with Mr. Hydara, the ALJ found the mental status examination findings conclusory and lacking adequate testing to support the findings.   (AR 33.) This lack of support is a legally sufficient reason to discredit the opinion. *See Batson*, 359 F.3d at 1195. The ALJ also noted that Dr. Sherman recommended plaintiff continue to receive medical coverage, indicating she was acting as an advocate for her patient, thus detracting from the reliability of the opinion. (AR 33.) As with Mr. Hydara, the Court finds this reason less persuasive. However, the ALJ provided other specific and legitimate reasons to discredit Dr. Sherman's opinion, and thus, did not commit reversible error.

D.    Victoria McDuffee, Ph.D.

Victoria McDuffee, Ph.D. completed a psychological evaluation on December 28, 2010, at the request of the Washington State DSHS. (AR 312-20.) Dr. McDuffee diagnosed plaintiff with cognitive disorder, PTSD, and acculturation problems and measured his GAF score at 40. (AR 313.)   Dr. McDuffee opined plaintiff would be markedly limited in understanding,

REPORT AND RECOMMENDATION
PAGE - 13

remembering, and persisting in tasks following complex instructions, in learning new tasks, in performing routine tasks without undue supervision, and in being aware of normal hazards and taking appropriate precautions. (AR 314.) She also opined plaintiff would be severely limited in communicating and performing effectively in a work setting with public contact and in behaving appropriately in a work setting. *Id.* Plaintiff argues the ALJ erred by failing to provide specific and legitimate reasons to discredit this opinion. This Court finds otherwise.

The ALJ first discredits the evaluation because Dr. McDuffee opined more severe limitations that the record supports. (AR 32-33.) An ALJ need not accept the opinion of even a treating physician if that opinion is inadequately supported "by the record as a whole." *See Batson*, 359 F.3d at 1195. The ALJ noted that while Dr. McDuffee found plaintiff to have severe limitations in navigating hazards and plaintiff's family reported he was unable to use the stove safely, this concern was significantly overstated, since plaintiff was able to operate a motor vehicle without supervision. (AR 32-33.) The ALJ also noted that while Dr. McDuffee found plaintiff to have significant limitations socially, the record demonstrated that he lived with several family members, had a significant other for at least six months, interacted with his brother's friends, attended community college, and planned to visit Jordan. (AR 25, 33.) The ALJ reasonably concluded that the severity of Dr. McDuffee's opinion was unsupported by the record as a whole.

The ALJ also discredited the opinion because Dr. McDuffee was not aware of plaintiff's improper use of narcotic pain medication. (AR 32.) The ALJ reasoned that this demonstrated Dr. McDuffee did not have an accurate diagnostic picture when rendering her opinion. *Id.* The ALJ noted in great detail plaintiff's improper use of such medication and the fact that plaintiff's mental health counselor noted that he took narcotic medication specifically to numb his

REPORT AND RECOMMENDATION
PAGE - 14

1    emotions, rather than for pain.  (AR 29.)  Dr. McDuffee's records do not indicate that she was

2    aware of plaintiff's use of such medication.  (AR 314.)  Dr. McDuffee's lack of information was

3    a specific and legitimate reason to discredit her opinion.  Thus the ALJ did not err in evaluating

4    this opinion.

5    E.    George Ankuta, Ph.D.

6          George Ankuta, Ph.D., evaluated plaintiff as part of a consultative examination on

7    February 16, 2011.  (AR 287-89.)  Dr. Ankuta diagnosed plaintiff with PTSD and measured his

8    GAF score at 50.  (AR 288-89.)  Dr. Ankuta opined that plaintiff "may have difficulty tolerating

9    the emotional stress of competitive work."  (AR 289.)  Plaintiff argues the ALJ erred by failing

10   to provide legitimate reasons to discredit the opinion.  Dkt. 13 at 13-14.  Again, this Court

11   disagrees.

12         The ALJ discredited Dr. Ankuta's opinion that plaintiff "may have difficulty tolerating

13   the emotional stress of competitive work" because Dr. Ankuta did not explain the basis for this

14   limitation.  (AR 32.)  Plaintiff argues this reason was not legally sufficient because the ALJ

15   accepted other parts of Dr. Ankuta's opinion that similarly failed to specify the basis for the

16   opinion. Dkt. 13 at 13-14.  However, neither party has challenged the ALJ's acceptance of those

17   opinions from Dr. Ankuta.  As stated previously, an ALJ need not accept the opinion of even a

18   treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical

19   findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195.

20         In addition, the ALJ noted that other information in the record contradicted Dr. Ankuta's

21   finding.  (AR 32.)  Notably, the ALJ pointed out plaintiff's ability to sustain the examination

22   with Dr. Ankuta as well as plaintiff's ability to tolerate exposure therapy.  *Id.* Dr. Ankuta's lack

23   of explanation for the basis of his opinion as well as the contradiction with the record was a

REPORT AND RECOMMENDATION
PAGE - 15

specific and legitimate reason to discredit the opinion.

Residual Functional Capacity (RFC) Assessment

Plaintiff also argues that the ALJ erred in her RFC assessment. Dkt. 13 at 14-18. This argument is based entirely on the premise that the ALJ erred in evaluating the medical evidence and in evaluating plaintiff's credibility. As discussed above, the Court does not find that the ALJ committed reversible error in evaluating the medical evidence or plaintiff's testimony. Thus, plaintiff's argument regarding the RFC assessment fails.

**CONCLUSION**

For the reasons set forth above, this matter should be AFFIRMED.

**DEADLINE FOR OBJECTIONS**

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14)** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 13, 2015**.

DATED this 28th day of January, 2015.

Mary Alice Theiler
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 16